LEWIS CONST. CO. v. SEMPLE et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,711.

1. PATENTS (§ 26*)—INVENTION—TRANSFER OF DEVICE TO ANALOGOUS ART.

Pumps and spoil pipes for dredgers belong to arts not so remote that the transfer of a method of lining from one to the other involves invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SPOIL PIPES FOR DREDGERS.

The Semple patent, No. 752,474, for an improvement in pipes for use in carrying sand, gravel, and other material from dredgers and hydraulic or other excavating devices, the pipe having a lining composed of blocks of wood arranged in circular series presenting the grain of the wood endwise at the inner surface of the blocks for a wearing surface, such series of blocks being inclosed in a casing of longitudinal wooden strips, the series of blocks being bound with hoops, and the outer casing wound with wire, discloses patentable invention, but, in view of the prior art, and prior structures in analogous arts, is entitled to only a narrow construction and is limited to the precise structure shown. As so construed, *held* not infringed by a dredge pipe having a bottom only of similar blocks held in place by flanges on the inner surface of the inclosing pipe.

Appeal from the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Suit in equity by Zoe Agnes Semple and Ethel Swanstrom, as executors of the will of Eugene Semple, deceased, against the Lewis Construction Company. Decree for complainants, and defendant appeals. Reversed.

Leander T. Turner and Frank A. Steele (John D. Morgan, on the brief), for appellant.

T. O. Abbott and Philip Tindall, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge. A patent was issued on February 16, 1904, to Eugene Semple for an improvement in pipes. Letters patent No. 752,474. He brought the present suit against the appellant to obtain an injunction and damages on account of the alleged infringement of his patent. The specification describes the invention as an improvement in pipes for use in carrying sand, gravel, and other material from dredgers and hydraulic or other excavating devices. It is constructed with an inner layer of wooden blocks, an outer layer of wooden strips surrounding the blocks, and hoops surrounding each circle of blocks and secured thereto, said hoops fitting within the outer layer of wooden strips, and a binding wire or rod wound spirally around the wooden strips, the wooden strips extending longitudinally and constituting a casing. The claims which are said to be infringed are 3, 4, 8, 9, and 10, and are as follows:

"(3) A pipe having a lining composed of a series of blocks of wood, presenting the grain of the wood endwise at the inner faces of the blocks, and a casing, substantially as set forth.

"(4) A pipe having a lining consisting of blocks arranged with the grain extending in practically a radial direction, whereby the end of the grain will be presented at the inner faces of the blocks, substantially as set forth."

"(8) A pipe for use in carrying sand, gravel and other material from dredgers, hydraulic, or other excavating devices, having its interior composed of blocks of wood arranged in circular series, and presenting the grain of the wood endwise, at the inner faces of the blocks.

"(9) A pipe having a lining consisting of blocks arranged in circular series with the grain extending in practically a radial direction, and a casing consisting of a circular series of longitudinal strips encircling the lining of blocks and extending over the joints between the adjacent circular series of said blocks, substantially as set forth.

"(10) A pipe having a lining composed of a plurality of circular series of blocks, the adjacent series abutting each other, and the blocks having the grain extending in practically a radial direction, substantially as set forth."

Wooden pipes, made of staves and wire-wound, were made and were well known in the art before the date of Semple's invention. They were not calculated to withstand the friction of sand and gravel, in carrying material from dredgers and other excavating devices. Various expedients had been adopted to reinforce them and to lengthen their life, by an inner casing of wood or metal. Semple conceived and carried out the idea of lining the pipe with blocks of wood so arranged as to present the grain of the wood endwise at the inner surface.

The pipe used by the appellant was manufactured under a patent issued to James Hopkirk, on March 21, 1905, No. 785,423, for an improvement in stave wooden pipes. The device consists of a stave pipe bound with metal hoops or spiral wire; two of the staves being thicker than the others at the lower edges and presenting opposed shoulders within the pipe. Between the shoulders are inserted single arcuate segmental blocks. These segmental blocks are cut across the grain, and they constitute a removable wearing surface in the bottom of the pipe.

The appellees contend that the Semple patent is for a pioneer invention; that, as such, its claims are entitled to a liberal construction; and that the patent is not to be limited to the exact mechanism de-

scribed, but is entitled to the benefit of the doctrine of equivalents. It becomes necessary, therefore, to examine the prior art and to determine the rank of Semple's invention. The patent to H. M. Stow of March 31, 1874, exhibits a polygonal stave pipe bound with a spiral wire and having a lining of staves so arranged as to break joints. The patent to Winfield S. Potter of April 7, 1894, describes a mortar in which ore is crushed or triturated, as lined with blocks so arranged that the wear thereon shall be across the grain of the wood. A similar use of wooden blocks is found in the patent to J. B. Irvin, of December 3, 1889. The patent to Isaac D. Smead of January 6, 1903, exhibits an iron pipe consisting of series of iron staves built one upon another, and bound together with steel hoops. The patent to M. F. Wilcox of October 8, 1901, shows wooden pipes built up and formed of a number of wooden strips bound together by metallic hoops. The patent to Samuel Houston of October 23, 1875, is for a pavement, consisting of blocks of wood, with the end grain for a wearing surface. The patent to Jacob Boyers of November 8, 1881, for an improvement in pumps, has for its claim 2:

"A pump provided with a hardwood lining having the end of the grain presented to the action of the piston and fluid."

Some confusion as to the nature of the Boyers' invention arises from the statement in the specification that the hardwood lining is to be prepared by sawing and bending it so as to adjust it to the pipe bore, and the appellees contend that the intention was not to use a lining of wood with the grain presented to the action of the piston and fluid, since it is impossible to steam and bend such blocks. But it is obvious that the inventor had in mind two forms of hardwood lining, one of which might be blocks of wood with the end grain for a wearing surface as specified in claim 2.

The patent to J. H. Martin, May 15, 1883, No. 277,762, is for a closed rectangular pipe clamped together and lined on the sides and bottom with blocks of wood "which are sawed out across the grain so that when placed in position the wear will come on the end grain."

The file wrapper of the Semple patent shows that the examiner rejected the original application, on a reference to the patents to Smead, Wilcox, and Houston. The patent to Houston showed a pavement consisting of blocks of wood with the grain on the end, and the examiner held it to be no invention to substitute that for the lining shown in the Wilcox structure. The applicant amended his application, and it was again rejected on the patents to Wilcox and Houston. The applicant again amended his application by adding claims 9 and 10. All the claims involved in this suit were rejected on reference to the patents to Wilcox and Houston. On appeal to the Board of Examiners in Chief, the decision of the examiner was reversed, and the patent allowed. The board considered the question of anticipation and patentability only as affected by the Wilcox, the Houston, and the Smead patents, but made no reference to the Martin patent or the Boyers patent. That those patents were not considered is shown by the language of the decision of the board, in which it was said:

"While it is true that blocks of wood with their ends disposed with the ends of the grain upward to resist wear have been used as elements of a pavement, and while it may be said to be.of general knowledge among the mechanics that the ends of the fibres of a wooden block more strongly resist frictional wear than do their sides, yet it does not appear that this well-known fact has ever been utilized by pipemakers to make any part of a pipe. We are of the opinion that this new idea of a pipe lining so formed as recited in each claim is not imitative, but rather is conceptive novelty entitled to protection."

It appears from the testimony that, prior to the date of the Semple invention, others, who were engaged at Seattle in the work of hydraulic dredging and filling the tide flats with the débris, had had under consideration the use of various materials for a wearing surface for their wooden pipes, one of which was wooden blocks, and that the difficulties which confronted them were two: First, the greatly increased weight of the pipe that would result from such lining; and, second, the problem of holding the blocks in place in the pipe. Semple was the first to devise a scheme for retaining the blocks in place. For that device he obtained a patent, and we hold that his invention was patentable. But, in view of the prior art, and the long and well-known use of blocks of wood as a wearing surface, as pavement, as lining for flumes and as lining for the bottom and sides of box flumes, and particularly its use as shown in the Boyers and the Martin patents, we think that the scope of the Semple patent must be limited to the use of such blocks in circular series, with his device for holding them in place, and that he cannot be allowed the broad claim of invention of the idea of lining a wooden pipe in whole or in part with wooden blocks presenting the end grain to the attrition of the spoil. It does not follow that, because he was the first to introduce into a large wooden pipe wooden blocks presenting the end grain as a wearing surface, he became entitled to a monopoly of the use of such blocks in wooden pipes. He had before him the Boyers patent, in which the same device was used for a wearing surface. It is true that the Boyers patent relates to the lining of pumps, but the two arts are not so remote that the transfer of the lining from one to the other would involve invention. Stearns & Co. v. Russell, 85 Fed. 218, 29 C. C. A. 121; Standard Caster & Wheel Co. v. Caster Socket Co., 113 Fed. 162, 51 C. C. A. 109; W. F. Burns Co. v. Mills, 143 Fed. 325, 74 C. C. A. 525. He had before him also the patent to Martin, in which the bottom and sides of a rectangular flume were lined with such blocks and for the same purpose. There was no invention in adopting the use of such blocks in a cylindrical pipe. It was but a change in form. Nor can invention be predicated upon the use of such lining blocks in radial form. No other form was possible. If a pipe is to be lined with blocks so as to present the end grain thereof as a wearing surface, and retain a cylindrical inner surface, the blocks must of necessity be arranged radially. In short his invention was a mere improvement or adaptation of what had gone before, and it does not mark a distinct step in the development of the art. The novelty of his patent must rest on the means which he adopted to carry his idea into effect.

In view of the rank of the Semple invention, as we find it, it is unimportant that no pipe has been used or even manufactured under the patent, or that the Hopkirk pipe, owing to its decreased weight and cost, its simplicity of construction, the facility with which its blocks may be inserted and removed, has proved valuable and successful and has gone into extensive use. The Semple invention being confined, as it must be, substantially to the precise construction which the patent describes, it is obvious that the Hopkirk invention does not infringe it. Instead of using a circular series of blocks, lining the whole pipe, the appellants use only a single block in the bottom of the pipe. In the Semple device it is evident that each circular series of blocks must be held in position by hoops or bands to which each block is nailed or otherwise attached. In the appellant's pipe there are no hoops for the lining, nor any device to hold the blocks in position, save the projecting shoulder of a stave on either side between which each segmental block is dovetailed to form the floor of the pipe. These marked differences of construction are sufficient to avoid infringement.

The decree is reversed, and the cause remanded, with instructions to dismiss the bill.

NOTE.—The following is the opinion of Hanford, District Judge, in the court below:

HANFORD, District Judge. These are suits in equity for injunctions restraining the infringement of patents and for damages. I find a description of the invention covered by Hopkirk's patent in the brief filed by his solicitor, which, to be accurate, requires only an addition of a few words. With the amendment it reads as follows: The invention covered by the patent may be briefly described as a device for a wearing face in cylindrical conveyors of earth matter in suspension in water, by means of which the structure of the conveying pipe is protected from wear; the wearing face being composed of wooden blocks shaped to set vertically and radially and fit substantially the form of the pipe, with the end grain of the blocks constituting the interior skin (and held securely in the bottom by projections or extensions upon either side of the interior), the wearing face being removable and renewable without injury to the structure of the pipe.

To make out of the above a perfectly accurate description of Gov. Semple's invention covered by claims 3, 4, 8, and 10 of his patent, it is only necessary to take out of it the words inclosed in parenthesis. The Semple patent is the elder, and there is no pretense that any of his ideas were suggested to him by Hopkirk. The actual difference in the two devices is that, in the one designed by Semple, the lining is arranged in sections encircling the hollow interior space, each section being bound by a hoop; whereas, in the Hopkirk pipe, only a segment of the bottom interior surface is lined by wooden blocks set radially and vertically, and, as a substitute for the part of the lining omitted, the arch of the cylinder is completed by the material and shape of the casing, a thickened edge of one of the staves of the pipe on each side forming a shoulder against which the segment of lining in blocks presses as a wedge, so as to make a tight joint and preserve the cylindrical form of the hollow interior space. The fact that an accurate description of the later invention can be adapted to describe accurately the elder, without the addition of a single word and merely by deleting part of a sentence, demonstrates to a certainty that all of the meritorious features of the earlier have been absorbed in the later device.

The argument of the defense in the Semple case assumes that the first question to be decided is: "Does any claim of the Semple patent include a pipe made like the device shown in the drawings annexed to the Hopkirk patent,

and which, instead of having a complete lining of end-grain blocks, has only a partial lining secured as shown in said drawings?" Only one answer can possibly be made to this, and that is a negative answer; but that inquiry could have been conceived only in a misunderstanding of the law. A valid patent does not necessarily have to embody all the ideas which may originate in the future and be applicable to the invention which it protects. Any device which embodies all of a previously patented invention is none the less an infringement by reason of the addition of something new. Such a device, even though it be better and more serviceable by reason of the addition, is not even patentable unless the addition is a new discovery and a useful improvement.

I consider that the arguments in behalf of both complainants ably sustains the finding of the board of examiners in chief, on the appeal taken by Gov. Semple from the decision of the original examiner, in which it was said: "While it is true that blocks of wood, with the ends disposed with the grain upward to resist the wear, have been used as elements of a pavement, and while it may be said to be of familiar knowledge among mechanics that the ends of fibers of wooden blocks more strongly resist frictional wear than do their sides, yet it does not appear that this well-known fact has ever been used by pipe makers to make any part of a pipe. We are of the opinion that this new idea of a pipe lining, so formed as recited in each claim, is not imitative, but is conceptive novelty to protection. Accordingly the decision of the examiners is reversed."

I find in the case no grounds which would justify a court in annulling that decision. The claims of the Hopkirk patent are so phrased as to leave the merit of his invention quite obscure; but, read in connection with the specifications and drawings, it is possible to find that they do cover an original idea applied to a practical use. The merit of the device is in the means provided for subdividing the bore of a pipe by the peculiar shape of two of its sections, so as to form a segmental space or groove, which space may be filled by suitable material shaped to fit, and constituting a reinforced wearing face, without changing materially the cylindrical form of the bore. For this device, I hold his patent to be valid; but it does not entitle him to a monopoly in the use of pipe having an interior wearing face covering only part of the bore, and held in place by any and every possible means, and I hold that the defendant Hawley has not infringed the Hopkirk patent because he has not used pipe constructed on the principle of Hopkirk's design. The insertion in a pipe of end-grain blocks, covering part of the interior surface and held in place by pieces of scantling or cleats nailed to the casing, is not the same thing as the Hopkirk device, nor equivalent, because it does not accomplish the purpose of forming a reinforced wearing face without changing the cylindrical form of the bore, which is an important feature.

In case No. 1,425 it will be decreed that an injunction be issued as prayed for. At present I am not sufficiently advised to be able to determine what, if any, damages should be allowed to the plaintiff; and, unless the parties agree with respect to the damages, the case will be referred to the master in chancery to hear evidence and assess the damages.

Case No. 1,486 will be dismissed, with costs.