MODEL BOTTLING MACHINERY CO. v. ANHEUSER–BUSCH BREWING ASS'N.†

(Circuit Court of Appeals, Eighth Circuit. September 18, 1911.)

No. 2,831.

1. PATENTS (§ 328*)—ANTICIPATION—APPARATUS FOR PASTEURIZING BEER.

The Wagner patent. No. 607,304, for an apparatus for pasteurizing beer, which consists of endless chains having receptacles for conveying bottles of beer through a tank with compartments containing water of different temperatures, is void for anticipation by the apparatus of the Leach British patent, No. 5,065, of November 19, 1881, for curing fish, which employs the same mechanical combination for a similar purpose in an analogous act.

2. PATENTS (§ 61*)—ANTICIPATION—DATE OF APPLICATION FOR PATENT.

An application for a patent for a process cannot be considered, for the purpose of the question of anticipation, a continuation of a prior application for a patent for a machine for carrying out such process, which, although disclosing the process, did not claim it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 77; Dec. Dig. § 61.*]

3. PATENTS (§ 328*)—ANTICIPATION—PROCESS FOR PASTEURIZING BEER.

The Wagner patent, No. 768,550, for a process for pasteurizing beer, is void for anticipation by the Pindstofte German patent, No. 89,691, of December 9, 1896.

4. PATENTS (§ 72*)—ANTICIPATION—PROCESS.

It is not necessary, to constitute an anticipation of a process patent, that the two processes should be identical in all particulars; but it is sufficient if in general aspects they are the same, and the difference in minor matters is only such as would suggest itself to a person possessing ordinary skill in the art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86-91; Dec. Dig. § 72.*]

5. PATENTS (§ 64*)—ANTICIPATION—PROCESS.

A patent for a process may be anticipated by a prior patent for a machine which fully discloses such process.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 64.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by the Model Bottling Machinery Company against the Anheuser-Busch Brewing Association. Decree for defendant, and complainant appeals. Affirmed.

Hugh K. Wagner, for appellant.

George H. Knight and C. C. Linthicum (Howard G. Cook and Nagel & Kirby, on the brief), for appellee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied December 11, 1911.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. This action is based upon an alleged infringement by defendant of letters patent No. 607,304, pertaining to a mechanical apparatus for pasteurizing beer, and for the infringement of a process for pasteurizing beer covered by letters patent No. 768,550; said patents issued to E. Wagner, and complainant being assignee of the patents. Patent No. 607,304 was issued July. 12, 1898. The claims in this patent are as follows:

"1. In an apparatus of the character described, the combination of a tank, a pair of endless chains, sprocket-wheels in engagement with which said chains are adapted to travel, bottle-receiving receptacles pivoted to said chains, and means for driving said chains, substantially as described.

"2. In an apparatus of the character described, the combination of a tank, a pair of endless chains, sprocket-wheels in engagement with which said chains are adapted to travel, bottle-receiving receptacles pivoted to said chains, said receptacles comprising U-shaped bars and cross-bars arranged on corresponding sides of said U-shaped bars, and means for driving said chains, substantially as described.

"3. In an apparatus of the character described, the combination of a tank, divided into three compartments for warm, hot, and cold water, a conveyer arranged to travel through said compartments, said conveyer comprising a pair of endless chains, and bottle-receiving receptacles pivoted to said chains, sprocket-wheels in engagement with which said chains are adapted to travel, means for driving said chains, and a spray-pipe arranged to direct a spray of water onto the bottles in the conveyer after they leave the hot-water compartment of said tank, substantially as described."

In the specifications it is stated that the apparatus is designed to pasteurize beer, by placing the bottles containing the beer into the bottle-receiving receptacles, thence carried continuously through. the tank containing three compartments, the first of which contains warm water, the second compartment water of sufficient temperature to pasteurize the beer, the third containing cold water for the purpose of cooling the bottles. The patent is for an apparatus or machine to effectuate the pasteurizing process, and nothing more.

The first specification, the only one claimed to be infringed, is a combination of old and well-known devices, consisting of a tank, a pair of endless chains used in connection with sprocket-wheels, adapting said chains to travel, bottle-receiving receptacles pivoted to said chains, and means for driving said chains.

[1] One of the defenses interposed is that this patent is void because of prior anticipation. Numerous patents are cited and have been introduced in evidence to support such defense. We regard it, however, as unnecessary to review but one—British patent No. 5065, issued to one George Leach, under date of November 19, 1881.

The Leach apparatus, designed for the curing of fish, was a combination of the same mechanical elements as complainant's, namely, a tank divided into three compartments, a pair of endless chains in connection with sprocket-wheels by which said chains were moved, carrying receptacles attached to the chains, and means for driving the chains. The operation of Leach's apparatus was by placing the fish to be cured in the receiving receptacle attached to the chains, and

by the movement of the chains they were first immersed and cleansed in the first compartment in the tank, which contained water, then transferred to the second compartment, containing hot water, and from thence into the third compartment, containing oil.

We can perceive of no difference in the machine or apparatus of complainant and that of Leach, or in their operation, excepting that the receiving receptacle in Leach's is in form tubular, in which bottles would have to be placed horizontally, while in the complainant's apparatus the bottles can be placed perpendicularly. But such a change in form of the receptacle in these respects is one which would readily suggest itself to a person of ordinary mechanical skill.

The art of curing fish and pasteurizing beer to preserve it are analogous. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267. Hence complainant's apparatus for pasteurizing beer is but a double use of Leach's apparatus for curing fish. For such reason, the first claim of complainant's patent No. 607,-304, alleged to be infringed, is void. Crescent Brewing Co. v. Gottfried, 128 U. S. 158, 9 Sup. Ct. 83, 32 L. Ed. 390; Aron v. Manhattan Ry. Co. 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272; Thomson-Houston Electric Co. v. Rahway Electric L. & P. Co. (C. C.) 95 Fed. 660; W. F. Burns Co. v. Mills, 143 Fed. 325, 74 C. C. A. 525; American Brake Shoe & Foundry Co. v. Railway Materials Co. (C. C.) 143 Fed. 540.

The process patent is also alleged to be void because of prior anticipation. In determining this defense it becomes important to ascertain the date from which complainant is entitled to have the application for such patent considered as having been first made, as the state of the prior art is to be considered from the date of the application. The chronological order in which applications were made for the several patents of complainant, and the proceedings connected therewith, in the Patent Office, appear to be as follows:

Application for patent No. 607,304 was filed January 3, 1898, and patent issued July 12, 1898. The application was entitled "For the Improvement in Beer Pasteurizing Apparatuses," and was for the machine or apparatus before considered. June 30, 1899, an application was filed in the Patent Office for an improvement to said machine and for the process of pasteurizing beer. This application was ordered divided by the Patent Office, and the application proceeded as one for an improvement in the machine mentioned, which resulted in a patent for such improvement being granted of date July 24, 1900. The date when the order of division was made does not appear, but on June 2, 1900, an application for the process patent was filed. After rejection was made by the examiner on the ground of anticipation, an appeal was taken from the examiner to the board of examiners, and from that board to the commissioner; each sustaining the decision of the examiner. An appeal was then taken to the Court of Appeals for the District of Columbia, which reversed the decision of the Commissioner and sustained the application; the process patent being thereafter issued under date of August 24, 1904.

[2] Complainant contends that it is entitled to have the application

for the process patent treated and held as a continuation of the application for the machine patent filed January 3, 1898, and its validity determined from the state of the art at that date. That one application for a patent may be a continuation of a prior application for the same thing under certain circumstances is unquestioned.

In Hayes-Young Tie Plate Co. v. St. Louis Transit Co. 137 Fed. 80, 70 C. C. A. 1, this court had for consideration the question as to when one application for a patent might be considered a continuation of a former application for the same thing. It was said:

"There is a wide difference between the abandonment of an invention and the abandonment of an application for it. An abandonment of an application is not necessarily an abandonment of the invention, and after the application has been abandoned a valid patent for the invention may nevertheless be secured upon a new application, provided the invention has not gone into public use or been upon sale for more than two years prior to the filing of the latter. In cases in which the first application has not been abandoned, subsequent applications and amendments constitute a continuance of the original proceeding, and the two years' public use or sale which may avoid the patent must be reckoned from the presentation of the first application, and not from the filing of subsequent applications or amendments [citing cases]. But the abandonment of an application destroys the continuity of the solicitation of the patent. After abandonment, a subsequent application institutes a new and independent proceeding, and the two years' public use or sale which may, invalidate the patent issued upon it must be counted from the filing of the latter application [citing cases]."

The case before us does not involve the question of abandonment of the application filed January 3, 1898, for the reason, as before stated, that that application was for a machine pure and simple, and in no respect for the process. True it is that the process was disclosed in the specifications, but such is always required in machine applications. If, as stated in the foregoing case, the abandonment of an application destroys the continuity, and a subsequent application must be treated as a new and independent proceeding, how can it be said that there is any continuity between an application which did not make claim to the process, but only to the machine, and a subsequent application for the process.

Among the numerous cases cited by appellant in support of the claim of continuity, we find none where it has been held that, when a patent has been issued to a party for all he claimed in his application, the party may subsequently make a new application for a new patent upon omitted matters, and that such new application was a continuation of the first or original application, without surrendering the first patent and obtaining a reissue of the first for the unexpired term of the first patent, as provided in section 4916 of the Revised Statutes (Act July 8, 1870, c. 230, § 53, 16 Stat. 205 [U. S. Comp. St. 1901, p. 3393]).

In this case Wagner did not surrender the original patent and apply for a reissue for the unexpired period, but applied for and obtained an entirely new patent, the life and monopoly of which extended over a period of more than six years longer than the first patent. Patent No. 607,304 was a mechanical invention, the process one of art, and complainant could not, under an application for a reissue, have in-

cluded the process claim, as the machine and the process are separate inventions. Powder Co. v. Powder Works, 98 U. S. 126, 25 L. Ed. 77; Eachus v. Broomall, 115 U. S. 429, 6 Sup. Ct. 229, 29 L. Ed. 419. So the process patent cannot be held to be a continuation of the original application of January 3, 1898, but at best can only date from June 30, 1899. Therefore, in considering the validity of the process patent as having been anticipated, we shall consider the state of the art as it existed June 30, 1899.

[3] Under the provisions of section 4886 of the Revised Statutes, as amended in 1897 (Act March 3, 1897, c. 391, § 1, 29 Stat. 692 [U. S. Comp. St. 1901. p. 3382]), to entitle a party to a patent for a new invention or discovery in art, machine manufacture, or compound, etc., his application must be made within two years of any foreign patent or being described in any printed publication in this or any foreign country, or within two years from public use or sale in this country.

Among the various patents in evidence to establish anticipation are those of the Swiss, No. 11,321, of date October 10, 1895, to Gasquet, and the German patent, No. 89,691, of date December 9, 1896, to Pindstofte. In determining whether these patents may properly be said to anticipate Wagner's process, it becomes necessary to briefly consider the description and claims of each.

Wagner, in his specifications, stated:

"This invention relates to an improved process for pasteurizing beer, the object being to destroy the yeast molecules and germs contained in the beer, in order to prevent further fermentation, in a simple, cheap, and convenient manner."

"For the sake of convenience in describing the process, a drawing is filed herewith; it being understood, of course, that I do not limit myself to this form of apparatus for the practice of my improved process, but that the essential characteristics of said process are set forth in the claims."

The claims are stated as follows:

"1. The improved method of pasteurizing beer, consisting in continuously moving the receptacles containing the beer through a pasteurizing agent.

"2. The improved method of pasteurizing beer, consisting in continuously moving the receptacles containing the beer at a uniform speed through a pasteurizing agent.

"3. The improved method of pasteurizing beer, consisting in continuously moving the receptacles containing the beer through a preparatory heating medium, then continuously moving the same through a warming-chamber, then continuously moving the same through a pasteurizing agent, and then gradually cooling the same.

"4. The improved method of pasteurizing beer, consisting in continuously moving the receptacles containing the beer through a pasteurizing agent and then reducing the temperature thereof by cooling-currents falling thereon.

"5. The improved method of pasteurizing beer, consisting in continuously moving the receptacles containing the beer through a pasteurizing agent, and then reducing the temperature thereof by means of cooling-sprays.

"6. The herein-described process of pasteurizing beer, consisting of continuously moving the receptacles containing the beer through a warming medium, then continuously moving said receptacles through a pasteurizing agent, and then continuously moving said receptacles through cooling media."

Thus it would seem that Wagner's process consists in the continuous moving of the receptacles containing the bottles of beer through

190 F.—37

a warming, pasteurizing, and cooling medium, the mode of so doing being any appropriate form of apparatus.

Gasquet's Swiss patent he described as:

"An apparatus serving for heating·or cooling by the method of exchange of temperature of all liquids in bottles, in view of the pasteurizing of wines, beers, ciders, milk, vinegar, various syrups, as well as the betterment of brandies and liquors."

His process consisted of a vat containing compartments in which were placed the receptacles containing the liquors to be pasteurized, then subjecting them to the effect of warming, pasteurizing, and cooling water, which was caused to flow alternately through the vat; the only substantial difference between the two processes being that in Wagner's the water was statia in the compartment, and the receptacles moved continuously through it, while in Gasquet's the receptacles were at rest and the water flowed through the vats. The evidence shows that by Wagner's process the movement of the receptacles containing the bottles was at the rate of one foot every two minutes, and it was not thought by the Patent Office that such slow movement had any material effect in the uniformity of the pasteurizing action, but that was "due to the uniform heating of all portions of the bath before the carrier mechanism was brought into operation."

The Court of Appeals thought otherwise, saying:

"Disregarding elaborate description of either process, we find the Gasquet process to involve the moving of heated water around stationary bottles containing the liquor to be pasteurized, while in the process of the present application the heated water is stationary and the bottles containing the liquor are moved through it. This to our mind very greatly differentiates the two processes. * * * The effect of heat in moving water is different from that of stationary water; and the results in one case are shown to be different from those in the other. Heat is evolved in both cases; but the heat in one case may be better conserved, as well as made more effective, than in the other."

While the decision of the Court of Appeals is not conclusive as to the validity of the patent in this action (Rev. Stat. § 4914 [U. S. Comp. St. 1901, p. 3392]; Butterworth v. Hoe, 112 U. S. 50–60, 5 Sup. Ct. 25, 28 L. Ed. 656; U. S. v. Duell, 172 U. S. 576, 19 Sup. Ct. 286, 43 L. Ed. 559), and the question as to whether the Wagner process was anticipated by that of Gasquet is open for our consideration, we regard it unnecessary so to do, in view of the process shown in the German patent to Pindstofte. The latter, not then being in evidence, was not considered by the Court of Appeals. Pindstofte's apparatus he describes as a water bath, containing three spaces, "whose length sides carry rails for the wheels on whose shafts there are suspended the baskets. Into these baskets the goods are placed that are to be pasteurized, and the baskets are introduced into the water bath." After being introduced into the bath, the baskets move slowly along the rails through the bath. His claim is as follows:

"A pasteurizing apparatus, consisting of a receiver serving to take up a water bath, which is divided into spaces (A, B, C) following each other in series and connected with each other, in which case the middle part (C) of the water bath is heated to the desired maximum temperature, while the part (A) into which the not yet heated goods are set is cooled and the part lying

at the delivery end *(B)* is kept cooled by this, that cold air, is fed to the bath, and in which case the goods to be pasteurized pass slowly through the water bath from one end to the other of the apparatus, in such manner, that they are gradually heated to the temperature necessary for pasteurization and thereupon are cooled off in a similar manner."

Thus it is shown that Pindstofte's process is identical with that of Wagner; the only observable difference being that Wagner describes the movement of the receptacles containing the beer as "continuous," while Pindstofte describes the movement of the receivers by his process as passing slowly through the water bath from one end to the other.

[4] It is, however, insisted upon the part of complainant that this difference is material; that slowly passing through the water bath does not imply a continuous movement. Be that as it may, it is not necessary, in determining the question of anticipation, that the process should be identical in all particulars. It is sufficient if in general aspects the two processes are the same and the difference in minor matters is only such as would suggest themselves to a person possessing ordinary skill in the art. We have no doubt that a process whereby the thing to be pasteurized slowly passed through the agency would be very suggestive of a continuous movement.

[5] But it is said that these patents to Gasquet and Pindstofte were machine patents, and, being such, are impertinent as evidence of anticipation. A full and complete answer to this is that, though these patents were each for an apparatus, they fully disclosed the process, and upon the issue of the patents such process was published.

The decree is affirmed.