### EATON v. LEWIS.

#### (Circuit Court, S. D. New York. February 17, 1902.)

**1. PATENTS—DESIGNS—LIMITATION AS TO SUBJECT-MATTER.**
  A design patent cannot be sustained on the ground that the article has mechanical utility, but, to be valid, it must relate to a matter of ornament, and the design must have an æsthetic value. A fastening for machinery belts is not an appropriate subject for such a patent.

**2. SAME—BELT FASTENINGS.**
  The Eaton design patents, Nos. 30,518, 30,519, and 30,520, each for a design for belt-fastener plates, for uniting the ends of machinery belting, are void because the article is not a proper subject for a design patent.

In Equity. Suit for infringement of letters patent Nos. 30,518, 30,519, and 30,520, issued April 11, 1899, to Andrew L. Eaton,—each for a design for belt-fastener plates.

John H. Hazelton, for plaintiff.
Robert H. Racey, for defendant.

WHEELER, District Judge. This suit is brought upon three patents, Nos. 30,518, 30,519, and 30,520, dated April 11, 1899, and granted to the plaintiff for designs for belt-fastener plates. They are used for holding the ends of belting together to form machinery belts, and their operation is wholly mechanical. The specifications respectively refer to drawings on which straight parallel sides or ends are marked A; semicircular ends or swells, $A'$; midway projecting points at the sides, $A^2$; easy curves between these points and swells, $A^3$; and holes for rivets in the centers of the circular ends and swells, a; and that of 30,518 sets forth:

"The plate is longer in one direction than the other, with rounded ends and parallel sides, having an outwardly extending point or projection on each of the latter at the transverse center line. The leading feature of my design is the contour above described, consisting of the straight parallel sides, A; semicircular ends, A1; and the points, A2, arranged oppositely at the mid-length, with the hole, a, at the center of each of the rounded ends."

That of 30,519:

"The plate is of a general rectangular form, having oppositely extending semicircular portions on the ends at each corner, and an outwardly pro-

jecting point on each side on the transverse center line. The leading feature of my design is the contour above described, consisting of the straight parallel ends, A; the semicircular swells, A', arranged oppositely at the corners on said ends and extending outwardly; the points or projections, A², at the mid-width on each side, joined by easy curves, A³, to the swells; the holes, a, at the center of each of the latter; and the holes, a', on the longitudinal center line."

That of 30,520:

"The plate is of a general rectangular form, having oppositely extending semicircular portions at each corner, and an outwardly projecting point at each end on the center line. The leading feature of my design is the contour above described, consisting of the straight parallel sides, A; the semicircular swells, A', arranged oppositely and extending outwardly; the points or projections, A², on each end at the mid-width, joined by easy curves, A³, to the semicircular swells; and the holes, a, at the center of each of the latter."

This case was argued December 20th. Rowe v. Blodgett (upon a design patent for the shape of a removable calk for a horseshoe) 98 O. G. 1286, 50 C. C. A. 120, 112 Fed. 61, in the circuit court of appeals of this circuit, had been decided November 14th, but had not appeared, except from the circuit court (103 Fed. 873), and was not cited, nor has it been noticed till now. The circuit court of appeals said:

"Several defenses were urged, but Judge Townsend, at circuit, held as follows: 'I decide this case upon the broader ground that patents for designs are intended to apply to matters of ornament, in which the utility depends upon the pleasing effect imparted to the eye, and not upon any new function. The advantage claimed by complainant for the increased flat surface afforded by the curved line, which is the essential feature of his patent, is to enhance the mechanical utility of the calk, by thus making a stouter shoulder, which would not so readily become bruised out of shape, and which, therefore, could be more easily removed with a wrench, when worn, from the shoe. It is significant, in this connection, that the patentee first applied for this essential feature of downward-projecting curved lines on the sides of the base as a mechanical invention, which application was rejected, and that he then attempted to cover the same feature by a design patent. Design patents refer to appearance, not utility. Their object is to encourage works of art and decoration which appeal to the eye, to the æsthetic emotions, to the beautiful. A horseshoe calk is a mere bit of iron or steel, not intended for display, but for an obscure use, and adapted to be applied to the shoe of a horse for use in snow, ice, and mud. The question an examiner asks himself while investigating a device for a design patent is not, "What will it do?" but, "How does it look?" "What new effect does it produce upon the eye?" The term "useful," in relation to designs, means adaptation to producing pleasant emotions. There must be "originality and beauty. Mere mechanical skill is not sufficient." Northup v. Adams, 2 Ban. & A. 567, Fed. Cas. No. 10,328, approved in Smith v. Saddle Co., 63 O. G. 912, 148 U. S. 679, 13 Sup. Ct. 768, 37 L. Ed. 606; Ex parte Parkinson (1871) Dec. Com. Pat. 251.' We prefer to rest our affirmance on concurrence with these views."

That case seems to cover and control this. The projecting points at the middle of the sides of the fasteners of each of these patents serve to mark where to place the fasteners equally upon the ends of the belting to be joined; but that advantage is mechanical, and not æsthetic. Here, as there, a mechanical patent was applied for, and here one was obtained; and here, as there, the appearance of the

articles in use would be wholly immaterial. According to the principles of that case, as understood, this suit cannot be maintained.

Bill dismissed.

### On Reargument.
#### (May 8, 1902.)

Upon reargument it appears, as before, that the patents involved cannot be sustained without departing from Rowe v. Blodgett (C. C.) 103 Fed. 873; Id., 98 O. G. 1286, 50 C. C. A. 120, 112 Fed. 61.

Decree for defendant.