## BARKIS v. CALIFORNIA ALMOND GROWERS' EXCHANGE.

(District Court, N. D. California, S. D. November 18, 1925.)

No. 1301.

1. **Patents ⊕112(5)—Patent is presumed valid, and clearest of evidence required to establish invalidity.**

Validity of a patent is to be presumed, every doubt is to be resolved in its favor, and its invalidity may be established only by the clearest of evidence.

2. **Patents ⊕34—Prior patents are admissible to show state of art, as bearing on invention.**

Prior patents, though not pleaded as anticipations, are admissible to show the state of the art, and may be considered on the question of invention.

3. **Patents ⊕168(2)—Patents cannot be enlarged to cover rejected features.**

Where one feature only of a device was considered patentable by the Patent Office, the patent is limited accordingly, and cannot be expanded beyond the claims allowed.

4. **Patents ⊕17(1)—Adjustability is not "invention."**

Making a prior device adjustable is not "invention."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

5. **Patents ⊕328—Barkis, 1,353,209, for machine for bleaching almonds, held invalid for want of invention.**

The Barkis patent, No. 1,353,209, for a machine for bleaching almonds, consisting of an inclined drum, revolving in a sulphur chamber, *held* invalid for anticipation and want of invention, as merely an adaptation of similar devices used in other industries, as in drying grain, with adjusting means for varying the incline.

In Equity. Suit by Henry B. Barkis, Sr., against the California Almond Growers' Exchange. Decree for defendant.

Percy S. Webster, of Stockton, Cal., for plaintiff.

Charles E. Townsend, William A. Loftus, and William S. Graham, all of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. This is a patent infringement case, brought by the plaintiff, as patentee and owner of United States letters patent No. 1,353,209, for what purports to be a new and useful device for bleaching almonds. Defendant denies infringement, and attacks the validity of the patent. The case might well be disposed of on questions which do not affect its merits; however, in the interest of the parties, both of whom have asked for a final ruling, I shall address my decision to matters of substance.

As late as 1918, the old-fashioned tray system was in general use in Northern California for bleaching almonds. This method was slow, costly, and inefficient. An automatic bleacher was a necessity, and efforts then were being made to build or perfect one. The idea of using a stationary horizontal drum, inclosed in a sulphur chamber, already had been conceived, and plaintiff makes no claim to have originated it. In September, 1919, however, he applied for a patent on a revolving drum of similar nature, arranged continually to receive almonds at one end, and to discharge them at the other. On September 21, 1920, patent duly issued in his name.

[1] The validity of that patent, which now is assailed on numerous grounds, is, as an elementary proposition of law, at all times to be presumed. Invalidity may be established only by the clearest of evidence, and every reasonable doubt is to be resolved in favor of the patent. San Francisco Cornice Co. v. Beyrle (C. C. A. 9) 195 F. 516, 518. The burden of proof therefore is cast upon the defendant.

[2] Its principal contention is that the patent is void for lack of invention, in view of the prior art. Walker on Patents, § 38. Several other patents have been introduced in evidence, some of which were not pleaded, and of which the statutory 30 days' notice was not given. The only effect of the latter, says plaintiff, is to show the state of the prior art, to the end that the limitations of the claims may be defined, and that they are of no weight in an attempt to invalidate because the scope of the claim is not in issue. Defendant has cited authorities, which indicate in conclusive fashion that such a narrow construction of the rule of prior art cannot be maintained.

In Brown v. Piper, 91 U. S. 37, 41 (23 L. Ed. 200), the Supreme Court said: "Evi-

dence of the state of the art is admissible in actions at law under the general issue without a special notice, and in equity cases without any averment in the answer touching the subject. It consists of proof of what was old and in general use at the time of the alleged invention. It is received for *three* purposes, and none other—to show what was then old, to distinguish what was new, and to aid the court in the construction of the patent." (Italics mine.)

This language was quoted in the recent case of Kauffman v. Sodemann Heat & Power Co. (D. C.) 267 F. 435, 437, 439, and has been followed many times, with and without quotation. Its theory was accepted in Myers v. Sternheim (C. C. A. 9) 97 F. 625, the court saying that such patents "were not offered or allowed in evidence for the purpose of showing anticipation, for there was no such defense pleaded. * * * The purpose of such a showing is to throw light upon the question of invention, which lies at the foundation of the case."

Here that question decidedly is material. Utility of a device alone is insufficient. Rev. Stats. § 4886 (Comp. St. § 9430), requires the discovery of something new as well as useful. Since the novelty of plaintiff's bleacher is denied, all of the patents referred to must be considered upon the issue thus raised. Myers v. Sternheim, supra; Wonder Manufacturing Co. v. Block (C. C. A. 9) 249 F. 748, 750.

Together with other evidence, they show conclusively that it has long been a common practice to use the revolving drum method in drying and treating continuously substances other than almonds. It has been used to dry wet gravel, rocks, and sand; in steaming grain; for bolting flour; in the drying of fish offal; and in treatment of fruits as well as of other agricultural products. To this, perhaps, may be attributed the difficulty with which plaintiff obtained his patent, a fact which has narrowed the issues here.

[3] From a study of the Barkis file wrapper (Walker on Patents [5th Ed.] § 187), it is quite evident that to the Patent Office the only point of novelty in plaintiff's machine was its adjustment feature, for varying the incline of the drum. But for the existence of this feature, patent undoubtedly would have been refused. The letters issued, therefore, are to be considered within the scope of the claims as allowed (Minerals Separation v. Butte & Superior, 250 U. S. 336, 347, 39 S. Ct. 496, 63 L. Ed. 1019), and "a claim cannot be so construed as to cover what was rejected by the Patent Office in the application for the patent" (Broadway Towel Supply Co. v. Brown-Meyer Co. [C. C. A. 9] 245 F. 659, 661).

Turning now to the prior art, I find in the Wells patent (No. 131,379), which had reference to a method of steaming grain, every element of all the claims of Barkis, except that of adjustability of the end of the cylinder shaft. Manifestly, there would be no invention in using Wells for sulphuring almonds, and yet it is an entirely practical machine for that purpose, despite the fact that its cylinder walls were made of wire mesh, instead of wooden slats. Such, though, would be only an instance of a "double" use, and, of course, not one of invention. Ransome Concrete Co. v. United Concrete Machinery Co. (C. C. A. 2) 177 F. 413, 416; Knapp v. Morss, 150 U. S. 221, 227, 228, 14 S. Ct. 81, 37 L. Ed. 1059; Lewis v. Semple (C. C. A. 9) 177 F. 407, 410.

[4] To Wells, plaintiff has added only the feature of adjustability, and the law is settled that adjustability is not invention. Smyth Co. v. Sheridan (C. C. A. 2) 149 F. 208, 211; American Graphophone Co. v. Gimbel Brothers (C. C. A. 2) 240 F. 971, 972; Ball & Roller Bearing Co. v. Sanford Manufacturing Co. (D. C.) 280 F. 415, 419. It would seem to follow that Wells, which was pleaded, completely anticipates Barkis on all points except one, and that for the reason stated its added feature is immaterial.

[5] In this connection, reference is made to the following quotation from Potts v. Creager, 155 U. S. 597, 606, 607, 15 S. Ct. 194, 198 (39 L. Ed. 275), which is thought to be conclusive of the validity of plaintiff's patent: "Where the alleged novelty consists in transferring a device from one branch of industry to another, * * * we are bound to inquire into the remoteness of relationship of the two industries, what alterations were necessary to adapt the device to its new use, and what the value of such adaptation has been to the new industry." The Supreme Court said, in that case, that "it often requires as acute a perception of the relation between cause and effect, and as much of the peculiar intuitive genius, * * *, to grasp the idea that a device used in one art may be made available in another, as would be necessary to create the device de novo."

The value of this adaptation to the almond-growing industry is undoubted; "but no amount of commercial success will justify sustaining a monopoly, where it is made clearly and certainly to appear that the step

taken by the patentee did not involve any inventive merit." Universal Rim Co. v. Firestone Tire & Rubber Co. (C. C. A.) 7 F. (2d) 24, 25. The remoteness of the industry from several others, in which revolving inclined drums have been used, is far from great. Stationary horizontal drums have long been used for bleaching almonds, and the new use is, I think, "so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill." Potts v. Creager, supra. The stationary drum, in connection with revolving drums from kindred arts, was of such a character as to have furnished clear, if not unmistakable, suggestion of the improvement in question. 20 R. C. L. 1147.

Of the substitution of wooden slats for wire netting no point can be made. The only other alteration was to add an adjustable screw, which was not shown to be of much practicable utility, and the result of which already had been obtained in other revolving drums. Worrell, No. 256,940; Gibbs & Borwick, No. 134,659; Cummer, No. 633,-123. The rule of Potts v. Creager, supra, therefore does not require that the validity of the Barkis patent be sustained. It prescribes, in the last analysis, a question of fact, which in this case must be decided adversely to the plaintiff.

In other words, his disclosure embodies "simply the application * * * of an old process to a new subject, without any exercise of the inventive faculty, and without the development of any idea which can be deemed new or original in the sense of the patent law. *The thing was within the circle of what was well known before, and belonged to the public.* No one could lawfully appropriate it to himself, and exclude others from using it in any usual way for any purpose." Brown v. Piper, supra.

Mere change in form, proportion, or degree, of course, is not invention (Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; Neureuther v. Mineral Paint Zinc Co. [C. C. A. 7] 179 F. 851, 854), and as stated in Slote & Co. v. Stratton Co. [C. C.] 159 F. 485, 491, to invalidate a patent, "it is not necessary to find the precise process or structure in the prior art. It is all-sufficient if we find the path open, made so clear that the ordinary mechanic * * * would see and construct and apply." The fact that for a considerable time it was not done is by no means conclusive that, except to the inventive process, the way was closed.

The Cummer (No. 633,123) patentee,

who claimed to have invented an adjustably inclined, continuous rotary, open-ended, perforated drum, said of its possibilities of use: "Of course, a great variety of materials may be treated in a drier of this kind, as is now well known to those skilled in this art, and therefore an enumeration of such materials is not deemed necessary in this case." That patent, which was pleaded, seems clearly to anticipate Barkis. The function now desired was inherent in the structure of its device, and in its mode of operation. Had Cummer not expired, it would be infringed by Barkis as well as defendant, and, since the field of the prior art must be at least as broad as the field of infringement, any patent subsequent to it is void.

Let a decree be entered for the defendant, with costs.